*550 TEXTO COMPLETO DE LA SENTENCIA
La parte apelante, Arrowpac, Inc. (Arrowpac), solicita la revocación de una sentencia dictada el 15 de noviembre de 1999 por el Tribunal de Primera Instancia, Sala Municipal de Mayagüez (Hon. José A. Grajales Gonzalez, J.). Mediante la misma se declaró no ha lugar la demanda presentada por Arrowpac en cobro de dinero y se declaró con lugar la reconvención presentada en su contra por la parte apelada, Librería Universal, Inc. (Librería).
I
Librería Universal se dedica a la compra y venta de libros universitarios, escolares y de interés general; además produce e imprime libros de varios autores bajo su división conocida como Ediciones Riqueña.
Durante el 1993, Librería Universal utilizó los servicios de transportación de St. Johnsbury Tracking, Inc., siendo uno de los representantes de ventas de dicha compañía, el Sr. Fabián Díaz.
Tiempo después, St. Johnsbury cesó sus operaciones y el Sr. Fabián Díaz pasó a ser representante de ventas de Arrowpac, Inc. Arrowpac es una corporación dedicada al transporte de carga marítima entre Puerto Rico y Estados Unidos, con oficinas principales en New Jersey.
El Sr. Fabián Díaz, en representación de Arrowpac y Enid Colom, gerente general de Librería, acordaron que Arrowpac le brindara sus servicios a la Librería bajo los mismos términos y condiciones de transporte que Librería Universal disfrutaba con St. Johnsbury. Los términos y condiciones fueron los siguientes:

“a) 55% de descuento de la porción de transportación terrestre en los Estados Unidos o 60% que sirven directamente;

b) cero cargos por la transportación dentro de Puerto Rico, debido a que la Librería Universal recogería la mercancía directamente en los almacenes de Arrowpac;

c) ningún cargo adicional por gasolina ni servicios;

d) $9.00 de documentación, en vez de $15.00;

e) una tarifa especial de $1.68 por pie cúbico ó $4.40 "cubic-centiweight" (cwt) en el costo por peso de la mercancía a transportarse northbound y $1.90 pie cúbico ó $4.75 por quintal "cwt" southbound;

f) los cargos por transportación habrían de saldarse al comprobar la entrega al destinatario ("POD") cuando fuese "northbound", y hacer los ajustes pertinentes a la factura, conforme a los acuerdos; mientras que cuando fuese "southbound" habría primero que revisar la carga en cuanto a destinatario, número de bultos, reclamos por roturas, cargos de flete, cumplimiento de seguros y conformidad mutua de reclamos y ajustes, revisar la carga para cumplir con los seguros, consolidación de embarques destinados a varios sitios para así reducir cargos de documentación y aplicar un sólo cargo básico de transporte marítimo. ”

El 25 de marzo de 1994, la Librería Universal envió mediante fax los términos y condiciones acordados entre la Librería y Arrowpac, iguales o similares a los términos y condiciones del acuerdo con St. Johnsbury. Estos nunca fueron rechazados.
Luego de cinco envíos, el costo de la transportación de los libros que venían de Estados Unidos a Puerto Rico venían facturados "collect" a ser pagados por Librería Universal. Sin embargo, dichas facturas estaban siempre incorrectas y necesitaban ajustes por parte de Arrowpac. Así las cosas, el Sr. Fabián Díaz no pasaba por la oficina de Librería Universal para ajustar las facturas. Al contrario, Arrowpac, a través de una compañía de cobros propiedad del propio Sr. Amancio Leopoldo, quien era contralor de Arrowpac, insistía y amenazaba con el pago *551 de lo indebido.
Como el Sr. Fabián Díaz no pasaba por la oficina de la Librería, Enid Colom entregó en Arrowpac un cheque por la suma de $500.00, sin poder reunirse con el Sr. Fabián Díaz.
Luego, se generaron cinco facturas adicionales para un total de $906.80 sin ajustar o $546.41 ajustado. Por tanto, Enid Colom le entregó a Arrowpac ese mismo día un cheque por la suma de $247.17. Las otras facturas se quedaron pendientes por Fabián Díaz encontrarlas muy caras.
El 14 de enero de 1994, Librería Universal va nuevamente a los almacenes de Arrowpac a recoger los libros de Richard D. Irwin, habiéndole sido informado por Arrowpac que sí estaban disponibles para recoger y someter los documentos de arbitrio. Librería hizo la autorización de levante de arbitrios y cuando vuelve a Arrowpac, ésta informa que fue un error y que la mercancía no había llegado.
En una carta del 7 de febrero de 1994, suscrita por Harcourt Brace, informó no haber recibido los libros que Librería Universal había devuelto el 30 de diciembre de 1993 a través de Arrowpac.
El Sr. Alberto Veliz, de Arrowpac, informó que la razón por la cual esta mercancía no había llegado a su destino era por la supuesta falta de pago en ciertas facturas aún vigentes, ya que Arrowpac no había ajustado las facturas desde su origen y que él se encargaría personalmente de ajustar las facturas y conseguir la entrega de la mercancía. Ese día, el Sr. Juan Colom habló con Amancio Leopoldo, quien exigía el pago de las facturas sin ajustar para entonces entregar la mercancía confiscada, todo contrario al acuerdo existente.
Como consecuencia de los actos y omisiones de Arrowpac, Librería reclamó daños por ganancias dejadas de percibir y pérdida de precios especiales por la suma total de $56,382.75 que incluye Harcourt Brace, Irwin, y Addison-Wesley. Esta incertidumbre y las alegaciones de Arrowpac de que Librería no les había pagado los fletes, ocasionó falta de credibilidad y desconfianza total por parte de los suplidores, lo cual, a su vez, ocasionó cambios súbitos y extremos en los términos y condiciones de crédito y de negocio que Librería había gozado con algunos suplidores.
Debido a la tardanza en hacer los ajustes, Librería tuvo que tomar la iniciativa y en tres ocasiones hizo abonos a la cuenta, dos sin que se hubiesen recibido los correspondientes ajustes.
El 4 de marzo de 1996, Arrowpac presentó demanda en cobro de fletes. Posteriormente, Librería reconvino alegando que Arrowpac había confiscado mercancía para obligarla a pagar lo que le estaba cobrando Arrowpac. Alegó, además, Librería, que en vista de la confiscación, la relación entre ella y sus suplidores se afectó, ocasionándole daños.
El testimonio del Sr. Amancio Leopoldo, de Arrowpac, negó que hubiese contratado con Librería Universal bajo los mismos términos que ésta tenía con St. Johnsbury. No obstante, la Sra. Martha Otero, Gerente de Servicios al Cliente de Arrowpac aceptó durante su contrainterrogatorio la existencia real y definitiva de dicho acuerdo entre Arrowpac y Librería para hacer negocios bajo los mismos términos y condiciones que Librería tenía con St. Johnsbury.
Alega Arrowpac en su demanda que cursó facturas a Librería Universal por un total de mil quininentos noventa y nueve dólares con ochenta y ocho centavos ($1,599.88) y que solamente recibió el pago de trescientos sesenta y cuatro dólares con noventa centavos ($364.90). Que la Librería tomó motu propio unos descuentos no autorizados por la parte demandante. Que todavía la Librería le adeuda la cantidad de mil doscientos treinta y cuatro dólares con noventa y ocho centavos ($1,234.98).
Luego de celebrado el juicio en su fondo, el Tribunal de Instancia concluyó que Arrowpac no sólo incumplió su obligación de transportar los libros en controversia, sino que confiscó los libros, hasta tanto Librería pagase por *552 una tarifa no acordada. Determinó que dicha actuación fue una dolosa, consciente, voluntaria y a sabiendas de que realizaba un acto injusto. Así también concluyó que Arrowpac tampoco facturó a tenor con la tarifa que tenía radicada con el ICC, por lo que no tiene aplicabilidad el límite de los daños que Librería pudiera recuperar bajo la ley federal. Dictó la sentencia que se transcribe a continuación:

"1. Se declara sin lugar la demanda de Arrowpac; y

2. Se ordena a Arrowpac a pagar a la Librería Universal la suma total de $252,209.27por:

a) pérdida de ganancias y pérdida de precios especiales; b) daño al crédito; c) en gastos de devolver a los suplidores los libros que llegaron tarde; d) cargos de transportación pagados a Addison Wesley y Harcourt Brace para recuperar los libros confiscados por Arrowpac;

3. Se ordena a Arrowpac a satisfacer a la Librería Universal las costas, gastos y honorarios de abogado, debiendo Librería Universal someter un memorando al respecto dentro de treinta días."

Inconforme con el dictamen, Arrowpac presentó el escrito de apelación en el que hace los siguientes señalamientos de error:

“Erró el Tribunal de Instancia al desestimar la demanda de Arrowpac.

Erró el Tribunal de Instancia al reconocerle una acción en daños bajo el Código Civil, cuando el derecho federal, ocupa el campo y no permite el mismo.

Erró el Tribunal de Instancia al no desestimar la Reconvención por estar prescrita.

Erró el Tribunal de Instancia en su apreciación de la prueba al determinar que Arrowpac había confiscado mercancía de Librería Universal.

Erró el Tribunal de Instancia en su apreciación de la prueba desfilada al determinar que la causa de los problemas de Librería Universal con sus suplidores era Arrowpac.

Erró el Tribunal de Instancia en sus apreciación de la prueba desfilada al permitirle a Librería Universal reclamar daños inexistentes, especulativos, que realmente se debieron a su incumplimiento de su deber de mitigar daños, o no se probaron adecuadamente. ”

II
Por lo relacionados que se encuentran los errores alegados por el apelante, habremos de discutir los mismos de manera conjunta.
Alega Arrowpac que resulta impertinente cualquier acuerdo que pudo haber existido con Librería para cobrar fletes distintos a lo dispuesto en la tarifa de Arrowpac. Entiende, además, que es inconsecuente el hecho de haberse desviado de la tarifa en ocasiones anteriores.
El foro de instancia correctamente concluyó que a la luz de la prueba documental presentada y el contrainterrogatorio de Martha Otero, demostró la existencia de un acuerdo entre Librería y Arrowpac para honrar los términos y condiciones que Librería tenía con St. Johnsbury. Arrowpac no cumplió con su obligación de transportar los libros; no obstante, procedió a confiscar los libros porque entendía que Librería estaba pagando una tarifa que no habían acordado. Así también fue correcta la determinación del tribunal a los efectos de que Arrowpac confiscó mercancía a Librería, pues tanto el testimonio de Enid Colom como una carta enviada por la propia Arrowpac a Librería, lo establecieron directamente.
*553 Reiteradamente, nuestro Tribunal Supremo ha resuelto que los tribunales apelativos no intervendrán con la apreciación y adjudicación de credibilidad que en relación con la prueba testifical haya realizado el juzgador de los hechos a nivel de instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. Dicha determinación es merecedora de gran deferencia por parte del tribunal apelativo, por cuanto es ese juzgador de instancia quien de ordinario está en mejor posición para aquilatar la prueba testifical desfilada, ya que fue él quien oyó y vio declarar los testigos. Pueblo v. Negrón Martínez, _ D.P.R. _ (1997), 97 J.T.S. 53, a las págs. 920-921; Méndez v. Morales Medina, _ D.P.R. _ (1996), 96 J.T.S. 149, a la pág. 347.
A pesar del hecho de que la determinación que sobre credibilidad hace un juez de instacia no goza de "inmunidad apelativa", esto es, no constituye una "barrera insalvable", la misma merece gran deferencia y no deberá ser alterada a nivel apelativo a menos que ésta no encuentre apoyo en la prueba presentada y/o dicha determinación no presenta el balance más racional, justiciero y jurídico de la totalidad de la evidencia que desfilara ante el tribunal y/o se demuestre que el juzgador actuó movido por pasión, prejuicio o parcialidad. Pueblo v. Negrón Martínez, supra, a la pág. 922.
La prueba aportada, la cual forma parte del expediente que obra ante nos, así lo demuestra. La actuación del Tribunal de Primera Instancia nos merece gran deferencia y respeto, y en ausencia de los factores que activan nuestra intervención sobre las determinaciones de hechos de dicho foro, no habremos de intervenir con éstas. Es en virtud de ello que el foro de instancia no erró al desestimar la demanda del apelante y declarar con lugar la reconvención en su contra.
Arrowpac alega que Librería no tiene derecho a reclamar daños bajo el Código Civil, ya que el derecho federal ocupa el campo y ésta legislación no permite otra causa de acción.
La doctrina del campo ocupado surge del Artículo VI, Sección 2 de la Constitución de los Estados Unidos. Dicha doctrina postula, en síntesis, que en caso de existir conflicto entre una ley estatal y una federal, ha de prevalecer ésta sobre aquélla. La intención de ocupar el campo ha de surgir de alguna de dos formas: explícitamente en el estatuto, o implícitamente en la estructura y el propósito de la ley.
La doctrina de campo ocupado está basada en la Cláusula de Supremacía de la Constitución de los Estados Unidos, en su Artículo VI, cl.2, la cual establece:

“La presente Constitución, las leyes de los Estados Unidos que en virtud de ellas se aprobaren y todos los tratados celebrados o que se celebraren bajo la autoridad de los Estados Unidos, serán la suprema ley del país. Los jueces de cada estado estarán obligados a observarla, aun cuando hubiere alguna disposición en contrario en la Constitución o en las leyes de cualquier estado. ”

Es decir, cualquier ley o actuación de un estado que sea incompatible con el poder federal será inconstitucional, ya que si el gobierno federal de una manera u otra "ocupa el campo", desplaza (preempts) el poder estatal. R. Serrano Geyls, Derecho Constitucional de Estados Unidos y Puerto Rico, Ira ed., Colegio de Abogados de Puerto Rico, 1986, Vol. 1, pág. 410.
En Puerto Rico rigen las mismas normas sobre desplazamiento del poder estatal que las que gobiernan a los estados. R. Serrano Geyls, op. cit., pág. 418. El Tribunal Supremo de Puerto Rico, en Bordas & Co. v. Srio. de Agricultura, 87 D.P.R. 534, 552-553 (1963), abarcó el tema de campo ocupado y expresó lo siguiente:
“No se presumirá que la reglamentación federal sustituye a la reglamentación estatal por el hecho de que el Congreso reglamente un área en forma limitada. Para que así sea, es necesario que la ley del Congreso interpretada razonablemente esté en conflicto real con la ley del estado. En ausencia de una prohibición específica en la ley federal contra una ley local, la legislación insular que complementa la ley federal es válida, siempre y cuando la primera no esté sustancialmente en conflicto con la segunda. El conflicto debe ser tan directo y positivo que las dos leyes no puedan armonizarse o coexistir al mismo tiempo. ” (Citas omitidas.)
*554 El desplazamiento del poder estatal por el federal puede ser expreso o implícito. Jones v. Rath Packing Co., 430 U.S. 519, 525 (1977). Ausente un mandato expreso en la ley federal de una intención de desplazar la ley estatal, la norma general existente es que el Congreso no ha intentado desplazar la ley estatal. Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947). Por supuesto, esta norma general tiene excepciones. El Tribunal Supremo de los Estados Unidos ha señalado tres criterios para que los tribunales determinen cuándo el poder federal ha ocupado un campo en particular. Dichos criterios son:
"[fjirst, ’[t]he scheme of federal regulation [may be] so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it’***.... Second, the federal statutes touch afield in which the federal interest is so dominant that the federal system [must] be assumed to preclude enforcement of state laws on the same subject’*** .... Third, enforcement of state sedition acts presents a serious danger of conflict with the administration of the federal program." Pennsylvania v. Nelson, 350 U.S. 497, 502-505 (1956).
Aun cuando el Congreso no haya desplazado la regulación estatal en un área específica, la ley estatal quedará anulada en aquella-parte que conflija con la ley federal. Fidelity Federal S. & L. Assn. v. de la Cuesta, 458 U.S. 141, 153 (1982). Tal conflicto surge cuando la ley del estado constituye un obstáculo para el logro de los plenos propósitos y objetivos del Congreso. Id.
Aplicando la doctrina antes esbozada a los hechos particulares del caso, Arrowpac alega que la ley federal es aplicable al caso y que bajo dicha ley un porteador no es responsable por los daños especiales que puedan surgir como consecuencia de una alegada violación de contrato, salvo que se demuestre que el porteador tenía conocimiento de las circunstancias particulares de la carga transportada. Entendemos que el foro de instancia correctamente determinó que para que un porteador pueda limitar su responsabilidad bajo el Carmack Amendment, 49 U.S.C. sec. 11707, del Interstate Commerce Act, tiene que cumplir con el requisito de mantener las tarifas dentro de las guías prescritas por la ICC. Surge de la prueba presentada que Arrowpac no facturó a tenor con la tarifa que tenía radicada con el ICC, por lo que no quedaron limitados los daños que Librería pudiera recuperar. Dicho de otra manera, la ley federal antes citada no ocupó el campo en materia de transporte interestatal.
Por último, aduce el apelante que el Tribunal de Instancia debió desestimar la Reconvención por estar prescrita al haberse presentado luego de dos años de radicada la demanda. No le asiste la razón.
La Regla 11.1 de Procedimiento Civil, 32 L.P.R.A., Ap III, dispone en lo pertinente a las reconvenciones compulsorias lo siguiente:

"Una alegación contendrá por vía de reconvención cualquier reclamación que la parte que la formula tenga contra cualquier parte adversa al momento de notificar dicha alegación, siempre que surja del acto, omisión o evento que motivó la reclamación de la parte adversa y no requiera para su adjudicación la presencia de terceros sobre quienes el tribunal no pueda adquirir jurisdicción. Sin embargo, no será necesario incluir dicha reclamación mediante reconvención, si al momento de comenzarse el pleito, tal reclamación era ya objeto de otro pleito pendiente."

En el caso de autos, hay una reconvención compulsoria, ya que la misma surge del mismo acto sobre el cobro de fletes por una cantidad incorrecta, contrario al acuerdo entre Arrowpac y Librería. Es importante destacar que al presentar la demanda se interrumpió el término prescriptivo y que si la reconvención es compulsoria, tal interrupción aprovecha tanto al demandante, como al demandado reconveniente. Febo v. Tribunal, 102 D.P.R. 405 (1974).
III
Por los fundamentos antes expresados, se confirma la sentencia apelada.
El Juez Córdova Arone concurre con el resultado por escrito.
*555 Lo acordó el Tribunal y lo certifica la Subsecretaría General.
Gladys E. Ortega Ramírez
Subsecretaría General
ESCOLIO 2001 DTA 3
1. O sea, que si el porteador no mantiene las tarifas dentro de las guías establecidas por la I.C.C., entonces no puede ampararse en los límites de responsabilidad de la ley federal.